IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| AMERICAN COVERS, INC., a Utah corporation company,<br><br>               Plaintiff,<br><br>v.<br><br>PREMIER ACCESSORY GROUP, LLC., a New York limited liability company<br><br>               Defendant. | MEMORANDUM DECISION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS<br><br><br><br>Case No. 2:15-CV-432 TS<br><br>District Judge Ted Stewart |

This matter is before the Court on Defendant Premier Accessory Group's ("Premier") Motion to Dismiss or in the Alternative to Transfer Venue (Docket No. 16). For the reasons discussed more fully below, the Court denies Premier's Motion.

## I.  BACKGROUND

Plaintiff American Covers, Inc. ("American Covers") alleges that Premier's Freshtech USB Car Charger and Air Freshener products (the "accused products") infringe upon its United States Patent No. 9,042,712 (the "'712 Patent").[1] American Covers is a Utah corporation having its principal place of business in Draper, Utah.[2] Premier is a New York limited liability company with its sole place of business in Edison, New Jersey and was previously located in Long Island City, Queens, New York.[3]

---

[1] Docket No. 2, at 3–4.

[2] *Id.* at 1.

[3] Docket No. 16, at 2.

Premier does not, and has never, had an office in Utah.[4]  Additionally, it does not own or lease property in Utah, have a Utah phone number or business license, or pay taxes in Utah.[5]  "It does not have any officers, employees, or agents residing in Utah, nor does it send agents into Utah to solicit business."[6]

On June 16, 2015, counsel for American Covers visited an AutoZone store in Salt Lake City, Utah.[7]  The store had a display of Freshtech products for sale, including the accused products.[8]  AutoZone has retail locations in all fifty states.[9]  Premier sells its products to AutoZone, but states it has no control over when and how AutoZone sells those products.[10]

In addition to selling products through the retailer AutoZone, Premier has a website, www.premieraccessorygroup.com, which includes images of, and information about, the accused product.[11]  This website includes a link to www.freshtechusa.com[12] with a "Buy It Now" button on the menu bar, and when selected, navigates to a listing for the accused products on Amazon.com.[13]  The listing states that the accused device is "sold by FRESH TECH and Fulfilled by Amazon."[14]

---

[4] Docket No. 17, at 1.

[5] *Id.*

[6] *Id.*

[7] Docket No. 19, at 1.

[8] *Id.* at 1–2.

[9] *Id.* at 3.

[10] Docket No. 21, at 1.

[11] Docket No. 18, at 6.

[12] *Id.*

[13] *Id.* at 7.

[14] *Id.*

## II.  LEGAL STANDARD AND CHOICE OF LAW

On a motion to dismiss for lack of personal jurisdiction in a patent infringement action where jurisdictional discovery has not been conducted, the court must accept all uncontroverted allegations, and resolve all factual disputes in the plaintiff's favor.[15]  "To survive a motion to dismiss in the absence of jurisdictional discovery, plaintiffs need only make a prima facie showing of jurisdiction."[16]  Federal circuit law controls personal jurisdiction determinations for patent claims.[17]

In deciding a motion to transfer venue, regional circuit law controls.[18]  Premier bears the burden as the party seeking to transfer venue.[19]

## III.  DISCUSSION

### A.  PERSONAL JURISDICTION

Personal jurisdiction can be established either through general or specific jurisdiction. "Under general jurisdiction, the exercise of jurisdiction is proper where the defendant has continuous and systematic contacts"[20] and that such activity will "confer [ ] [general] personal

---

[15] *Nuance Comms., Inc. v. Abbyy Software House*, 626 F.3d 1222, 1231 (Fed. Cir. 2010); *AFTG-TG, LLC v. Nuvoton Tech.Corp.*, 689 F.3d 1358, 1359 (Fed. Cir. 2012).

[16] *Trintec Indus., Inc. v. Pedre Promotional Prods., Inc.*, 395 F.3d 1275, 1282 (Fed. Cir. 2005).

[17] *Elecs. for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1348 (Fed. Cir. 2003).

[18] *Storage Tech. Corp. v. Cisco Sys. Inc.*, 329 F.3d 823, 836 (Fed. Cir. 2003).

[19] *Chrysler Credit Corp., v. Country Chrysler, Inc.*, 928 F.2d 1509, 1515 (10th Cir. 1991).

[20] *Elecs. for Imagining, Inc.*, 340 F.3d at 1349 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 416 (1984)).

jurisdiction even when the cause of action has no relationship with those contacts."[21]  While American Covers' complaint states a conclusory allegation of general personal jurisdiction,[22] there is no evidence to support a finding of general jurisdiction.

The Federal Circuit requires a two-part inquiry to determine whether a court has specific personal jurisdiction over a nonresident defendant: (1) whether a forum state's long-arm statute permits service of process, and (2) whether the assertion of jurisdiction would be inconsistent with due process.[23]  "Sometimes these two inquires coalesce into one because the reach of the state's long-arm statute is the same as the limits of the due process clause, so that the state limitation 'collapses into' the due process requirement."[24]  In Utah, the Utah long arm statute reaches as far as the limits of federal due process.[25]  Therefore, an analysis of specific personal jurisdiction only requires the federal due process inquiry.

The Federal Circuit has established a three-part test to determine personal jurisdiction when the state long arm statute is intended to reach the limit of federal due process: "(1) whether the defendant purposefully directed activities at residents of the forum, (2) whether the claim arises out of or relates to those activities, and (3) whether assertion of personal jurisdiction is reasonable and fair."[26]

---

[21] *Avocent Huntsville Corp. v. Aten Intern. Co., Ltd.*, 552 F.3d 1324, 1331–32 (Fed. Cir. 2008) (quoting *Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1200 (Fed. Cir. 2003)).

[22] Docket No. 2, at 2.

[23] *Elects. for Imaging, Inc.*, 340 F.3d at 1340.

[24] *Trintec Indus., Inc*, 395 F.3d at 1279 (citing *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1360 (Fed. Cir. 2001)).

[25] *Synergetics v. Marathon Ranching Co.*, 701 P.2d 1106, 1110 (Utah 1985).

[26] *3D Sys., Inc. v. Aarotech Lab., Inc.*, 160 F.3d 1373, 1378 (Fed. Cir. 1998) (citing *Akro Corp. v. Luker*, 45 F.3d 1541, 1545–46 (Fed. Cir. 1995).

1. *Purposefully Directed Activities*

American Covers argues that Premier purposefully directed its activities at Utah in three ways: (1) by selling or offering to sell accused products to AutoZone retailers in the state of Utah; (2) by placing the accused product in the stream of commerce; and (3) by making the accused product available for sale through a link to Amazon from its website.[27]

a. Selling or Offering to Sell the Accused Product in Utah

American Covers argues that the fact that Premier has committed acts of patent infringement by selling and offering to sell the accused product in AutoZone retailers in Utah is a sufficient basis alone to conclude Premier has purposefully directed its activities at the forum.[28] American Covers alleges that because the tortious injury occurred here, this Court has personal jurisdiction.[29]  American Covers relies on language in *Trintec Industries, Inc. v. Pedre Promotional Products, Inc.*[30] and *Beverly Hills Fan Company v. Royal Sovereign Corporation*,[31] stating that the injury in patent infringement cases occurs at the location of the infringing sales. However, the courts in both cases were not making these statements to purport that an injury occurring in the forum is sufficient to satisfy the purposeful direction element of specific personal jurisdiction.  They were instead analyzing long-arm statutes specific to those forums.

---

[27] Docket No. 18, 11–16.

[28] *Id.* at 10–11.

[29] *Id.* at 10.

[30] 395 F.3d 1275, 1280 (Fed. Cir. 2005).

[31] 21 F.3d 1558, 1571 (Fed. Cir. 1994).

Furthermore, "[i]n simple terms, doing business with a company that does business in [the forum] is not the same as doing business in [the forum]."[32]  To decide that the fact that a patent infringement occurs in Utah, regardless of who initiated the infringement, is sufficient alone to establish personal jurisdiction would ignore the touchstone of minimum contacts: "the relationship among the defendant, the forum, and the litigation."[33]  In this case, AutoZone is selling the accused product in Utah stores, and Amazon sells the accused products over the internet.  By automatically imputing the actions of AutoZone and Amazon to Premier, American Covers fails to consider Premier's relationship with Utah ignores the due process analysis.

Although less than clear, American Covers appears to be basing this argument on the "effects test" of *Calder v. Jones*.[34]  In general, the effects test theory of personal jurisdiction focuses on the effects of a defendant's intentional actions towards a specific and identifiable plaintiff in the plaintiff's home forum.[35]  In *Calder*, defendants located in Florida wrote a libelous story drawn from California sources concerning the California activities of a California resident whose career was centered in California.[36]  The Court held that jurisdiction over the petitioners in California was proper as a result of the "effects" in California of their Florida conduct, stating "California is the focal point both of the story and of the harm suffered."[37]  Despite the result in *Calder*, the Court stated, "[t]he mere fact that [defendants] can 'foresee' that

---

[32] *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1361 (Fed. Cir. 1998).

[33] *Shaffer v. Heitner*, 433 U.S. 186, 204 (1997).

[34] 465 U.S. 783 (1984).

[35] *Avocent Huntsville Corp.*, 552 F.3d at 1330 (citing *Calder,* 465 U.S. at 791).

[36] *Calder*, 465 U.S. at 788.

[37] *Id.* at 789.

the article will be circulated and have an effect in [the forum state] is not sufficient for an assertion of jurisdiction."[38]  "Instead, 'the forseeability that is critical to due process analysis . . . is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.'"[39]

In this case, there is no evidence that Premier specifically targeted American Covers patent in Utah.  Unlike *Calder*, whose libelous story was California-centric, there is nothing to indicate that Premier's alleged infringement would have effects in Utah solely based on third party sales or offers to sell here without necessarily relying on stream of commerce or its website.  Therefore, the analysis under stream of commerce or its website is more appropriate than the *Calder*'s effects test.

    b.  Stream of Commerce

American Covers alleges that personal jurisdiction is proper because Premier placed the accused product "in the stream of commerce with the specific intent that the [accused] product be sold nationwide, including Utah."[40]  "The forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State."[41]

---

[38] *Id.*

[39] *Avocent Huntsville Corp.*, 552 F.3d at 1331 (quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

[40] Docket No. 18, at 7–8.

[41] *World-Wide Volkswagen Corp.*, 444 U.S. at 297–98.

The seminal Federal Circuit case on the stream of commerce theory is *Beverly Hills Fan Company v. Royal Sovereign Corporation*.[42]  The plaintiff in that case brought a patent infringement action against the manufacturer and importer of an allegedly infringing fan.  The defendants filed a motion to dismiss for lack of personal jurisdiction and provided two declarations, one from the president of the manufacturing company and the other from the president of the importing company.  Each provided that the companies did not directly ship the accused fan into Virginia or do business in Virginia.[43]  A one-time sale of unrelated goods was sent to Virginia, which represented less than three percent of the importer's total sales that year.[44]  The defendants asserted that they had not sold the accused fan to distributors or anyone else in Virginia.[45]

The plaintiff provided several declarations in opposition.  One declaration was from a private investigator who purchased one of the accused fans from a Virginia store named Builder's Square.[46]  The manual accompanying the fan identified the defendant as the source of the fan.[47]  Builder's Square had approximately six retail outlets located throughout Virginia.[48]  At the relevant time, there were 52 of the accused fans available for sale at the outlets.[49]

---

[42] 21 F.3d 1558 (Fed. Cir. 1994).

[43] *Id*. at 1560.

[44] *Id*.

[45] *Id*.

[46] *Id.*

[47] *Id.*

[48] *Id.*

[49] *Id.*

Based on these facts, the Federal Circuit concluded defendants made ongoing and continuous shipments of the accused infringing product into Virginia and maintained an established distribution network that encompassed Virginia[50]  Based on the evidence, the Court "presumed that the distribution channel formed by the defendants and Builder's Square was intentionally established, and that defendants knew or reasonably could have foreseen, that a termination point of the channel was Virginia."[51]

In an unpublished opinion, *Schwanger v. Munchkin*,[52] the Federal Circuit applied *Beverly Hills Fan Co.* and concluded that purposeful minimum contacts were established when an infringing product was distributed through Wal-Mart and sold in the forum state.[53]  The court concluded that "the allegations here are that Munchkin purposefully shipped the accused product into Ohio through Wal-Mart, an established distribution channel.  The cause of action for patent infringement is alleged to arise out of these activities.  No more is required to establish the purposeful minimum contacts necessary for personal jurisdiction."[54]

Like in *Beverly Hills Fan Co.*, the accused products in this case were sold at a retailer within the state.[55]  Although the record does not indicate that Premier sells the accused product to AutoZone with the intention of having it sold specifically in Utah, and Premier claims to have no control over where AutoZone re-sells the accused product,[56] Premier intentionally sells the

---

[50] *Id.* at 1561, 1563, 1565.

[51] *Id*. at 1564.

[52] 217 F.3d 854 (Fed. Cir. 1999) (unpublished opinion).

[53] *Id*. at *6.

[54] *Id.*

[55] Docket No. 19, at 1–2.

[56] Docket No. 21, at 1.

accused products to AutoZone,[57] a retailer with locations in all fifty states.[58]  Premier does not

assert that selling the accused product was a one-time, isolated occurrence.  Rather, the evidence

when viewed in favor of Plaintiff, suggests an established distribution channel sufficient to find

personal jurisdiction.  As in *Beverly Hills Fan Co*., it can be presumed that this distribution

channel was intentionally established and, given Autozone's nationwide reach, Premier knew or

reasonably could have foreseen that its products could end with Utah.

Furthermore, this case is similar to *Schwanger* because AutoZone is a national retailer

similar to Wal-Mart through which the defendants purposefully distributed the accused products.

Like *Schwanger*, Premier does not have additional contacts with the state beyond the distribution

through its retailer, but distribution through a national retailer was sufficient in that case.  The

many cases cited by American Covers in its Response reach the same conclusion.  Accordingly,

the Court finds that Premier purposefully directed its activities at Utah under the stream of

commerce theory.

Premier relies on this Court's ruling in *Alphagen Biotech v. Langoost Enterprises, LLC*.[59]

In *Alphagen*, this Court found that personal jurisdiction did not exist under the stream of

commerce theory over a defendant that sold accused products to independent and separate

distributors, which then re-sold those products to customers through retail outlets operated in

Utah.  However, that case involved trademark infringement and did not implicate the Federal

Circuit's stream of commerce analysis as set forth in *Beverly Hills Fan Co*.  Thus, Premier's

reliance on *Alphagen Biotech* is misplaced.

---

[57] *Id.*

[58] Docket No. 19, at 3.

[59] No. 2:13-CV-15 TS, 2013 WL 2389792 (D. Utah May 30, 2013).

c.  Online Sales

American Covers alleges that personal jurisdiction is proper over Premier because Premier has the requisite minimum contacts with Utah through its website.[60]  Based on the Court's finding that Premier purposefully directed its activities at Utah under a stream of commerce theory, the Court need not reach this argument.

2.  *Claims arising out of or relating to defendant's contacts with Utah*

American Covers' claims of patent infringement, unfair competition, and unjust enrichment arise out of Premier's contacts with Utah.  Patent infringement occurs when someone "without authority makes, uses, offers to sell or sells any patented invention."[61]  American Covers alleges that Premier's contacts with Utah consist of selling or offering to sell infringing product into the state.  Therefore, American Covers' claims arise out of or relates to Premier's contacts with Utah and the second element of specific personal jurisdiction is met.

3.  *Reasonable and Fair*

While the plaintiff bears the burden to demonstrate minimum contacts with the forum, "upon this showing, defendants must prove that the exercise of jurisdiction is unreasonable."[62]  In determining whether the exercise of personal jurisdiction is reasonable and fair, the Court must balance: (1) the burden on the defendant; (2) the interests of the forum state; (3) the plaintiff's interest in obtaining relief; (4) the interstate judicial system's interest in obtaining the

---

[60] Docket No. 18, at 15.

[61] 35 U.S.C. § 271(a) (2012).

[62] *Elecs. for Imaging, Inc.*, 340 F.3d at 1350.

most efficient resolution of controversies; and (5) the interest of the states in furthering their social policies.[63]

Defeats of personal jurisdiction under this prong "are limited to the rare situation in which the plaintiff's interest and the state's interest in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum."[64]  The Supreme Court has indicated that most of a defendant's considerations can be cured by lesser means than rendering personal jurisdiction unconstitutional, such as a change of venue when a the party claims substantial inconvenience.[65]

Utah has an interest in preventing and providing redress for injuries that occur within this state.  Additionally, litigating the dispute here would relieve other forums of the burden of adjudicating American Covers' claims.  Furthermore, Premier bears the burden on this element of the specific personal jurisdiction analysis, but fails to allege any additional considerations that would render jurisdiction unconstitutional.  Therefore, the Court finds that exercising personal jurisdiction over Premier is reasonable and fair in this matter.

B.  TRANSFER OF VENUE

Under 28 U.S.C. § 1404(a), "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it

---

[63] *Viam Corp. v. Iowa Export-Import Trading Co.*, 84 F.3d 424, 429 (Fed. Cir. 1996).

[64] *Id.* (quoting *Beverly Hills Fan Co.*, 21 F.3d at 1568).

[65] *See Burger King Corp. v. Rudzewicz*, 471 U.S.462, 478 (1985) ("Most such considerations usually may be accommodated through means short of finding jurisdiction unconstitutional. For example, the potential clash of the forum's law with the 'fundamental substantive social policies' of another State may be accommodated through application of the forum's choice-of-law rules.  Similarly, a defendant claiming substantial inconvenience may seek a change of venue.").

might have been brought or to any district or division to which all parties have consented."[66] The

party seeking transfer of venue bears the burden of establishing that existing forum is

inconvenient.[67] "Section 1404(a) is intended to place discretion in the district court to adjudicate

motions for transfer according to an 'individualized, case-by-case consideration of convenience

and fairness.'"[68]

The Tenth Circuit has developed factors to be weighed in determining whether to transfer

venue:

> Among the factors [a district court] should consider is the plaintiff's choice of
> forum; the accessibility of witnesses and other sources of proof, including the
> availability of compulsory process to insure attendance of witnesses; the cost of
> making the necessary proof; questions as to the enforceability of a judgment if
> one is obtained; relative advantages and obstacles to a fair trial; difficulties that
> may arise from congested dockets; the possibility of the existence of questions
> arising in the area of conflict of laws; the advantage of having a local court
> determine questions of local law; and, all other considerations of a practical
> nature that make a trial easy, expeditious and economical.[69]

Considering these factors and Premier's burden of proof in requesting a transfer of venue, the

Court will deny Premier's Alternative Motion to Transfer Venue.

Under the first factor, a plaintiff's choice of forum should rarely be disturbed, "unless the

balance [of factors] is strongly in favor of the movant."[70]  Here, American Covers' choice of

forum is Utah.  Premier has not made any showing, except conclusory statements, that transport

---

[66] *Id.* § 1404(a).

[67] *Chrysler Credit Corp., v. Country Chrysler, Inc.*, 928 F.2d 1509, 1515 (10th Cir.
1991).

[68] *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*,
376 U.S. 612, 622 (1964)).

[69] *Texas Gulf Sulphur Co. v. Ritter*, 371 F.2d 145, 147 (10th Cir. 1967).

[70] *Schneidt v. Klein*, 956 F.2d 963, 965 (10th Cir. 1992).

of its witnesses or documents would be of notable inconvenience.  To demonstrate a venue is inconvenient to witnesses, the movant must "(1) identify the witnesses and their locations; (2) 'indicate the quality or materiality of the[ir] testimony'; and (3) 'show[ ] that any such witnesses were unwilling to come to trial . . . [,] that deposition testimony would be unsatisfactory[,] or that the use of compulsory process would be necessary.'"[71]

Premier cites a Federal Circuit case applying Fifth Circuit law, *In re Genentech*, stating, "[i]n patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer.  Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location."[72]  However, that case involved a plaintiff whose evidence required transportation from Europe and Washington D.C. regardless of the forum,[73] and the plaintiff's chosen forum had undisputedly no connection to any witnesses or evidence.[74]  "Merely shifting the inconvenience from one side to the other, however, obviously is not a permissible justification for a change of venue."[75]  Given that Premier bears the burden of proof, this factor does not tip in Premier's favor because it has only alleged that its president and vice-president live in New York and the general statement that usually in patent cases the bulk of evidence comes from the alleged infringer.

---

[71] *Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.,* 618 F.3d 1153, 1169 (10th Cir. 2010) (quoting *Schneidt*, 956 F.2d at 965).

[72] *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009).

[73] *Id.* at 1346.

[74] *Id.* at 1340–41.

[75] *Emp'rs. Mut. Ca. Co.*, 618 F.3d at 1167.

Moreover, American Covers has alleged that Premier violated both Utah statute and Utah common law.[76]  This Court is likely in a better position than New York to determine Utah law. Other remaining factors appear to be neutral and do not support transfer of venue.  Accordingly, because American Covers has chosen this forum and Premier has not met its burden in demonstrating this forum's inconvenience, the Court will deny Premier's Alternative Motion to Transfer Venue.

## IV.  CONCLUSION

It is therefore

ORDERED that Defendant Premier's Motion to Dismiss for Lack of Jurisdiction or in the Alternative to Transfer Venue (Docket No. 16) is DENIED.

DATED this 5th day of April, 2016.

BY THE COURT:

_____

Ted Stewart
United States District Judge

---

[76] Docket No. 2, at 8–10.